**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RONALD SATISH EMRIT,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 26-00269-JB-B** |
| | * | |
| **CITY OF NORTH PORT, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

**REPORT AND RECOMMENDATION**

This action is before the Court on review.[1] Plaintiff Ronald Satish Emrit ("Emrit"),[2] a serial *pro se* litigant, filed the instant action in this Court, purportedly on behalf of himself and his "best friend" James Christopher Lambert. (See Doc. 1). Because Emrit is proceeding *in forma pauperis* (see Docs. 2, 4), the Court has conducted an initial screening review of his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons stated below, it is recommended that this action be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

---

[1] This case has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S).

[2] Emrit also identifies himself as "Presidential Candidate P60005535" and "Satish Dat Beast also known as Go Go Satish, The Greatest Recording Artist/Musician of All Time." (Doc. 1 at 1).

## I. COMPLAINT

In this lawsuit, Emrit ("an indigent, disabled, and unemployed resident of the state of Nevada and Maryland") purports to sue various Defendants, including the "City of North Port, Florida Police Department and Sergeant Cooper of City of North Port, Florida Police Department"; the "Sarasota County Sheriff's Office and its Internal Affairs Division"; "City Hall and Mayor of North Port, Florida"; the "County Commissioners" of Sarasota County, Charlotte County, Lee County, and Manatee County, Florida; the "Florida Department of Law Enforcement"; the "Attorney General of Florida"; "Byron Donalds as Gubernatorial Candidate"; the "Medical Board of Tallahassee, Florida"; the "Florida Board of Bar Examiners"; and the Supreme Courts of Florida, Texas, Alabama, and Mississippi. (Doc. 1 at 6-7).

Emrit asserts that "the U.S. District Court for the District of Northern Alabama (as an Article III court) has jurisdiction over this matter because there is complete diversity of jurisdiction between the Plaintiff and the four defendants given that the plaintiff lives in Sarasota, Florida and no longer in Fort Worth, Texas." (Id. at 7). Emrit further asserts that "the U.S. District Court for the District of Northern Alabama also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal

Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause." (Id.).

Emrit's complaint is disjointed and littered with digressions, nonsensical legal conclusions, and superfluous information that has no bearing on any of his stated causes of action. As best the Court can discern, Emrit's claims appear to be based on an alleged July 2026 incident in which the North Port Police Department responded to the home of James Lambert. According to the complaint, Lambert "explained to Emrit" that he "contacted the City of North Port, Florida Police Department to complain about what he perceived to be illegal aliens making too much noise outside of his residence and perhaps trespassing which could lead to other felonies and/or misdemeanors such as breaking and entering, unlawful entry, burglary, etc." (Id. at 4). The complaint alleges that the North Port Police Department "sent something similar to or the equivalent of a 'swat team' or a 'task force' which were positioned outside of James Lambert's property as if they were going to go un [sic] his residence after a 'knock-and-announce' in which they supposedly could conduct a warrantless search without obtaining an official warrant from a magistrate judge based on the 9-1-1 call." (Id. at 5). However, Lambert allegedly "believes that neither the City of North Port, Florida Police Department nor the 9-1-1 dispatcher had probable cause or reasonable suspicion to conduct a warrantless search of James

Lambert's premises based off of 'knock-and-announce' or open fields doctrine involving a curtilage because of the fact that James Lambert explained on the 9-1-1 call that he was going to defend his property against what he believed to be illegal aliens which could have involved the 9-1-1 dispatcher contacting ICE as in Immigrations Customs Enforcement since Florida is a conservative state with many illegals from Latin and South America." (Id.). Lambert allegedly also "believes that all of the defendants were negligent in failing to realize that he was complaining about the disorderly conduct of what he perceived to be illegal aliens outside of his residence and he was trying to articulate to the 9-1-1 dispatcher that he had Second Amendment rights and stand-your-ground rights in a state which protected the same property and civil liberties of George Zimmerman of Sanford, Florida, as North Port and Sarasota are in the same federal jurisdiction as Sanford and Orlando." (Id. at 5-6).

Despite his lack of involvement in the events alleged, Emrit "argues that he has constitutional standing to be a co-plaintiff in this case with the legal fiction applied to a broad interpretation of doctrine of transferred intent in which the commission of any torts against James Lambert and his property are transferred to [Emrit] by nature of their relationship as good friends from the Riomar at Sarasota" and because Emrit "eventually

wants to move in with [Lambert] in North Port, Florida." (Id. at 6).

Based on the foregoing allegations, Emrit asserts thirteen counts against all defendants and contends that the causes of action asserted in those counts are "transferred to both plaintiffs under the doctrine of transferred intent." (Id. at 10-14). Emrit seeks either "500 billion dollars" or "45 million dollars" in damages, a preliminary injunction preventing Defendants "from trespassing upon the residence of James Lambert in North Port, Florida without a valid warrant issued by a magistrate judge," and a declaratory judgment "that individuals with Tourette's Syndrome should be treated with dignity and respect such that police officers should have sensitivity training regarding individuals such as the second plaintiff James Lambert who has indicated that he has been diagnosed with Tourette's Syndrome since a very early age in life." (Id. at 1, 14-15). Although this action is purportedly brought by both Emrit and Lambert, the complaint is signed only by Emrit. (Id. at 16).

## II. **STANDARDS OF REVIEW**

Section 1915(e)(2)(B) requires a district court to dismiss the complaint of a plaintiff proceeding *in forma pauperis* if the complaint (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary damages from a defendant who is immune from such relief. See 28

U.S.C. § 1915(e)(2)(B). The purpose of § 1915(e)(2) is "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

A case is frivolous under § 1915(e)(2)(B)(i) "when it appears the plaintiff has 'little or no chance of success.'" Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted). A court may conclude that a case has little or no chance of success and dismiss the complaint before service of process when the complaint's legal theories are "indisputably meritless" or when its factual contentions are "clearly baseless." Neitzke, 490 U.S. at 327. Separate from the court's authority to dismiss for failure to state a claim, the power to dismiss a complaint as frivolous provides courts with "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008) (quoting Neitzke, 490 U.S. at 327). Thus, under this standard, "wildly implausible allegations in the complaint should not be taken to be true." Id. A court may consider "a litigant's history of bringing unmeritorious litigation" when analyzing the question of

frivolousness. Bilal v. Driver, 251 F.3d 1346, 1350 (11th Cir. 2001).

A complaint may be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). Dismissals for failure to state a claim under § 1915(e) are governed by the same standard as dismissals under Federal Rule of Civil Procedure 12(b)(6). Id. Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations for each essential element of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010). A court must accept a plaintiff's well-pled factual allegations as true; however, the court is not required to accept a plaintiff's legal conclusions. Iqbal, 556 U.S. at 678.

The Court is cognizant that it must liberally construe Emrit's *pro se* complaint and hold it to a less stringent standard than formal pleadings drafted by lawyers. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the Court cannot act as counsel for

Emrit or rewrite an otherwise deficient pleading in order to sustain this action. See Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168-69 (11th Cir. 2014). And, as a *pro se* litigant, Emrit is still "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

## III. DISCUSSION

### A. Emrit's Complaint Should Be Dismissed With Prejudice.

As it has done in prior cases, the Court notes initially that Emrit is a serial *pro se* filer of egregiously frivolous complaints in federal court.[3] In addition to his pattern of filing frivolous lawsuits, Emrit "has an apparent penchant for filing the same case

[3] See, e.g., Emrit v. Fed. Bureau of Investigation, 2020 U.S. Dist. LEXIS 25331, at *1, 2020 WL 731171, at *1 (S.D. Cal. Feb. 13, 2020) (noting that Emrit "is a serial *pro se* filer of frivolous complaints in federal court against government agencies and officials and large corporations and their executives[, most or all of which] have been dismissed for improper venue or failure to state a claim"); Emrit v. Simon, 2017 U.S. Dist. LEXIS 193755, at *6-7, 2017 WL 11483901, at *3 (D. Minn. Nov. 14, 2017) (noting Emrit's "extensive history of repetitive, non-meritorious, and often frivolous lawsuits across the United States," and recommending restrictions on Emrit's ability to file new cases in the District of Minnesota), report and recommendation adopted, 2017 U.S. Dist. LEXIS 214491, 2017 WL 11483905 (D. Minn. Dec. 8, 2017); Emrit v. Bd. of Immigr. Appeals, 2022 U.S. Dist. LEXIS 151534, at *2, 2022 WL 4287659, at *1 (S.D.W. Va. Mar. 31, 2022) (noting that Emrit "continues to abuse the *in forma pauperis* ('IFP') privilege by recycling the same patently frivolous allegations against various government agencies and officials in inscrutable pleadings that demonstratively clog the federal district courts with meritless litigation"), report and recommendation adopted, 2022 U.S. Dist. LEXIS 151078, 2022 WL 3594518 (S.D.W. Va. Aug. 23, 2022).

simultaneously in multiple districts." Emrit v. Devos, 2020 U.S. Dist. LEXIS 60151, at *2, 2020 WL 1669872, at *1 (N.D. Fla. Mar. 4, 2020), report and recommendation adopted, 2020 U.S. Dist. LEXIS 58995, 2020 WL 1668050 (N.D. Fla. Apr. 3, 2020), aff'd sub nom. Emrit v. Sec'y, United States Dep't of Educ., 829 F. App'x 474 (11th Cir. 2020) (per curiam). This case is yet another example of that pattern, as Emrit has filed a substantively identical complaint against the same defendants in the United States District Court for the Northern District of Alabama. See Emrit v. City of North Port, Case No. 2:26-cv-01290-AMM (N.D. Ala. July 22, 2026). "It is clearly improper and an abuse of the judicial process to pursue identical claims in multiple jurisdictions." Emrit v. Devos, 2020 U.S. Dist. LEXIS 60151, at *4, 2020 WL 1669872, at *2.

Emrit's claims in this action are due to be dismissed as frivolous and for failure to state a claim upon which relief may be granted. This case is purportedly brought by both Emrit *and* James Lambert, but Lambert did not sign the complaint. Parties in federal court are authorized only to "plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. "The right to appear *pro se*, however, is limited to parties conducting 'their own cases,' and does not extend to non-attorney parties representing the interests of others." FuQua v. Massey, 615 F. App'x 611, 612 (11th Cir. 2015) (per curiam). By every indication, Emrit is not a licensed attorney; therefore, he cannot assert

claims on behalf of Lambert. Since Lambert did not sign the complaint, and Emrit cannot assert claims on his behalf, Lambert is not a party to this action. See Green v. Harmon, 2024 U.S. Dist. LEXIS 145142, at *2, 2024 WL 3748040, at *1 (S.D. Ga. July 18, 2024), report and recommendation adopted, 2024 U.S. Dist. LEXIS 142168, 2024 WL 3744367 (S.D. Ga. Aug. 9, 2024).

The Court reiterates that the instant complaint is based on an alleged incident at or near Lambert's residence in which Emrit had absolutely no involvement. Nevertheless, Emrit purports to bring claims on behalf of himself based on the indisputably meritless legal theory that because Emrit "eventually wants to move in with [Lambert] in North Port, Florida," he "has constitutional standing to be a co-plaintiff in this case with the legal fiction applied to a broad interpretation of doctrine of transferred intent in which the commission of any torts against James Lambert and his property are transferred to [Emrit] by nature of their relationship as good friends from the Riomar at Sarasota." (Doc. 1 at 6). Contrary to Emrit's assertion, there is no legal basis for any of the thirteen counts in this case, which are based on purported violations of Lambert's rights, to be brought on behalf of Emrit based on an invented theory of "transferred intent" through friendship between two individuals. See, e.g., Prahach v. Westchester Police Dep't of Yonkers, NY, 2009 WL 1058740, at *1 (N.D. Fla. Apr. 20, 2009) (noting that plaintiff had "no standing"

to pursue claim that police officers shot a "good friend" of his); Woods v. Dep't of Child & Fam. Servs., 2015 U.S. Dist. LEXIS 131474, at *11, 2015 WL 5785589, at *5 (D. Mont. Sept. 29, 2015) ("Ms. Woods appears to allege Defendants violated the rights of her mother and Mr. Bird. . . . Ms. Woods can only raise claims based upon the violation of her personal rights; she cannot raise a claim based on the rights of someone else.").

Additionally, Emrit's complaint fails to satisfy the requirement under Federal Rule of Civil Procedure 8 that all complaints set out "a short and plain statement of the claim showing that the pleader is entitled to relief" sufficient to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." See Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations and internal quotation marks omitted). Emrit's complaint violates this basic pleading requirement because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" and indiscriminately directs each count against all defendants without differentiating between the defendants and their conduct or specifying which defendants are responsible for the acts or omissions alleged.[4] See Weiland v.

---

[4] Indeed, it is clear that most of the defendants named have no conceivable connection to the events alleged.

Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322-23 (11th Cir. 2015).

Nor does Emrit's complaint offer anything to suggest that venue is proper in the Southern District of Alabama. The propriety of venue is generally governed by 28 U.S.C. § 1391(b), which provides that a civil action may only be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).[5]

Emrit's complaint lacks any factual basis establishing that venue in this district is proper under any of these subsections. Venue is not proper under § 1391(b)(1) because no defendant is alleged to reside in the Southern District of Alabama and not all

[5] In addition to citing 28 U.S.C. § 1391, Emrit alleges that venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1400. (Doc. 1 at 8). However, § 1400 "is the venue statute relating to copyright actions and patent infringement matters" and is inapplicable to the subject matter of Emrit's claims. See Presidential Candidate No. P60005535 v. Moore, 2025 U.S. Dist. LEXIS 152788, at *4, 2025 WL 2269788, at *2 (M.D. Pa. Aug. 8, 2025).

defendants are residents of Alabama. Venue is likewise not proper under § 1391(b)(2) because none of the events or omissions giving rise to Emrit's claims occurred in this district.[6] Given the complaint's allegations, it is likely that venue would properly lie in the Middle District of Florida, but Emrit has been designated a vexatious litigant and is subject to pre-filing screening restrictions in that district. See Emrit v. DeVos, 2020 U.S. Dist. LEXIS 68825, at *9, 2020 WL 9078298, at *4 (M.D. Fla. Apr. 20, 2020).[7] Finally, there is no indication § 1391(b)(3) is applicable. When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because Emrit's complaint is facially frivolous, fails to state a claim for relief, and is an abuse of the judicial

---

[6] The only apparent connection between this lawsuit and the state of Alabama is the fact that the Alabama Supreme Court is named as a defendant. However, there are no factual allegations in the complaint pertaining to the Alabama Supreme Court or the state of Alabama in general, which suggests that Emrit named the Alabama Supreme Court as a defendant for the sole purpose of manufacturing federal court venue in Alabama out of thin air.

[7] Emrit has also been declared a vexatious litigant in the District of Nevada, one of his alleged states of residence. See Emrit v. Centers for Medicare & Medicaid Servs. (CMS), 2016 U.S. Dist. LEXIS 5418, at *3, 2016 WL 164992, at *2 (D. Nev. Jan. 14, 2016).

process, it is recommended that this action be dismissed rather than transferred.[8]

Dismissal of a case with prejudice under § 1915(e)(2) is "an extreme sanction to be exercised only in appropriate cases." Camp v. Oliver, 798 F.2d 434, 438 (11th Cir. 1986). However, "[a] finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal." Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam). Likewise, a district court need not allow an amendment "where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).

Given Emrit's extensive track record of frivolous, duplicative, bad faith, and vexatious filings, the frivolous legal theories underlying his claims in this case, the lack of any basis to conclude that he could state a viable cause of action against any defendant in an amended complaint, and the lack of any relevant connection between his claims and the Southern District of Alabama, the undersigned submits that he should not be granted leave to amend his complaint. See Emrit v. Sec'y, United States Dep't of

[8] The undersigned recognizes that a district court may not dismiss an action for improper venue without giving the parties an opportunity to present their views on the issue. See Lipofsky v. N.Y. State Workers Comp. Bd., 861 F.2d 1257, 1258 (11th Cir. 1988). Emrit is therefore **informed** that he has the opportunity to be heard on the issue of venue by timely filing an objection to this report and recommendation.

Educ., 829 F. App'x at 477-78 (affirming the dismissal with prejudice of Emrit's complaint under § 1915(e)(2)(B)(i) when his claims were frivolous, venue was improper, and he filed the case simultaneously in multiple districts, thus abusing the judicial process).

**B. The Court Should Deem Emrit A Vexatious Litigant And Impose Pre-Filing Restrictions.**

In dismissing a previous frivolous complaint filed by Emrit in this Court, the undersigned warned Emrit that he was "coming perilously close to being deemed a vexatious litigant in the Southern District of Alabama" and that any further frivolous filings by Emrit would "result in a recommendation that he be deemed a vexatious litigant in this district and prohibited from filing any new documents without first obtaining the Court's prior written approval." Emrit v. Barkley, 2023 U.S. Dist. LEXIS 18528, at * 2023 WL 2355906, at *5 (S.D. Ala. Feb. 3, 2023), report and recommendation adopted, 2023 U.S. Dist. LEXIS 35609, 2023 WL 2352359 (S.D. Ala. Mar. 3, 2023). Since that time, Emrit has filed three more lawsuits in this Court (including this one), all of which are on their way to being dismissed as frivolous at the screening stage. See Emrit v. Carpenter, Case No. 1:26-cv-00250-KD-MU (S.D. Ala. July 10, 2026) (R&R entered recommending that Emrit's complaint be dismissed with prejudice as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-

(ii)); Emrit v. Murdoch, Case No. 1:26-cv-00268-TFM-N (S.D. Ala. July 21, 2026) (complaint asserting defamation and invasion of privacy claim against "the Grammys and its recording artists like Sabrina Carpenter and Lady Gaga" for "talking about President Donald John trump in a negative manner which could be perceived as violation of the Alien and Sedition Acts" and claim "that the Grammys have become a public nuisance to everybody in the worl[d] who understands that neither Los Angeles nor network TV (CBS) has any influence over a new music business").

> "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." Procup v. Strickland, 792 F.2d 1069, 1073 (11th Cir. 1986) (citing In re Martin-Trigona, 737 F.2d 1254, 1261-62 (2d Cir. 1984)). Judges have various tools available to address vexatious activities in their courts. These include, among other things, the ability to strike pleadings, impose monetary sanctions, impose pre-filing screening requirements, and the power of contempt. In most cases, the threats of monetary sanctions and reporting lawyers to bar regulatory authorities are sufficient to stop improper behavior. However, those approaches do nothing to stop *pro se* litigants who are not members of the bar, or who have no assets and are, for practical purposes, judgment-proof. For these individuals, admonishment by a judge or the imposition of a monetary sanction means nothing and does nothing to deter vexatious conduct. In these cases, a more direct approach is required.
>
> The Eleventh Circuit has recognized that the "All Writs Act" (28 U.S.C. § 1651) empowers federal district courts to enjoin parties from filing actions in judicial forums and otherwise restrict their filings. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 n.15, 1298 (11th Cir. 2002); see also Martin-Trinoga v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993). The Eleventh Circuit has affirmed various injunctions — such as pre-filing

> screening restrictions — against vexatious litigants. Copeland v. Green, 949 F.2d 390, 931 (11th Cir. 1991); Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 518 (11th Cir. 1991).
>
> When determining whether to enter an injunction against a *pro se* litigant, a district court should consider, among other factors: (1) the litigant's history of litigation, and in particular, whether it involved vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursing the litigation, including whether they have an objective good faith expectation of prevailing; (3) whether the litigant has caused needless expense to other parties or imposed an unnecessary burden on the courts and their personnel, and (4) whether other sanctions would be appropriate to protect the interests of the courts and other parties. Ray v. Lowder, No. 5:02-cv-316-Oc-10GRJ, 2003 U.S. Dist. LEXIS 17681, 2003 WL 22384806, at *2 (M.D. Fla. Aug. 29, 2003).

Emrit v. DeVos, 2020 U.S. Dist. LEXIS 68825, at *4-5, 2020 WL 9078298, at *2.

Upon consideration of these factors, the undersigned submits that the time has arrived for this Court to stop tolerating Emrit's frivolous and vexatious filings, as they impair the Court's ability to adjudicate the legitimate claims of other litigants. Accordingly, the undersigned recommends that the Court deem Emrit a vexatious litigant and issue an appropriate order imposing pre-filing restrictions on all new *pro se* filings the Clerk of Court receives from Emrit after entry of the final order and judgment in this case.[9]

---

[9] Such restrictions would not preclude Emrit from pursuing meritorious claims for relief, which in any event are unlikely to arise from transactions or occurrences in Alabama, since Emrit has no apparent connection to this state.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that this action be **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), because Emrit's complaint is frivolous and malicious and fails to state a claim upon which relief may be granted. It is further recommended that Emrit be declared a vexatious litigant in the Southern District of Alabama, and that the Court fashion and implement such pre-filing restrictions against Emrit as it deems appropriate.[10]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

[10] On July 27, 2026, Emrit filed a document that he labeled as a notice of appeal to the Eleventh Circuit, despite the absence of any appealable order in this case. (Doc. 3). Although filing a notice of appeal generally divests a district court of jurisdiction over those issues involved in the appeal, "a notice of appeal filed with respect to a non-appealable order does not have any effect on the district court's jurisdiction." United States v. Riolo, 398 F. App'x 568, 571 (11th Cir. 2010) (per curiam) (citation omitted); United States v. Kapelushnik, 306 F.3d 1090, 1094 (11th Cir. 2002) ("[A] premature notice of appeal does not divest the district court of jurisdiction over the case.").

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **6th** day of **August, 2026**.

**/S/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**